# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| RONALD GLAZE and ) | |
| HAZEL GLAZE, ) | |
| ) | Civil Action No. 20-374-MN-SRF |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| AIR & LIQUID SYS. CORP., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **REPORT AND RECOMMENDATION**

### **I.   INTRODUCTION**

Presently before the court in this asbestos-related personal injury action are motions for summary judgment filed by Armstrong International, Inc. ("Armstrong") (D.I. 105), Air & Liquid Systems Corporation ("Air & Liquid") (D.I. 110), Gardner Denver, Inc. ("Gardner") (D.I. 112), FMC Corporation ("FMC") (D.I. 114), Schneider Electric USA, Inc. ("Schneider") (D.I. 116), and Warren Pumps, LLC ("Warren Pumps") (D.I. 123) (collectively, "Defendants"). Plaintiffs Ronald Glaze ("Mr. Glaze") and Hazel Glaze (collectively, "Plaintiffs") did not respond to the motions.[1] For the reasons that follow, the court recommends GRANTING each of the motions for summary judgment.

---

[1] Armstrong filed an opening brief in support of its motion for summary judgment on September 28, 2021. (D.I. 106) Air & Liquid, Gardner, FMC, and Schneider filed opening briefs in support of their motions for summary judgment on September 30, 2021. (D.I. 111; D.I. 113; D.I. 115; D.I. 117) Warren Pumps filed an opening brief in support of its motion for summary judgment on October 8, 2021. (D.I. 124) Plaintiffs did not file answering briefs, which were due on or before October 12, 2021, October 14, 2021, and October 22, 2021. (D.I. 106; D.I. 111; D.I. 113; D.I. 115; D.I. 117; D.I. 124) Defendants Warren Pumps, Air & Liquid, FMC, Schneider, and Gardner submitted letters requesting that the court grant their respective unopposed motions. (D.I. 127; D.I. 128; D.I. 129; D.I. 130; D.I. 131)

1

| Defendant | Motion for Summary Judgment |
|---|---|
| Armstrong International, Inc. | GRANT |
| Air & Liquid Systems Corporation | GRANT |
| Gardner Denver, Inc. | GRANT |
| FMC Corporation | GRANT |
| Schneider Electric USA, Inc. | GRANT |
| Warren Pumps, LLC | GRANT |

## II.   BACKGROUND

### a. Procedural History

On January 30, 2020, Plaintiffs filed this personal injury action against multiple Defendants, asserting claims arising from Mr. Glaze's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On March 17, 2020, Defendant CBS Corporation removed the case to this court pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[2] and 1446. (D.I. 1) In September and October of 2021, the six moving Defendants filed motions for summary judgment and opening briefs. (D.I. 105; D.I. 110; D.I. 112; D.I. 114; D.I. 116) Plaintiffs did not file answering briefs to any of the motions, so they are deemed unopposed.

### b. Facts

Mr. Glaze served in the Navy for approximately 20 years, from November of 1966 to March or April of 1986. (D.I. 115, Ex. B at 15:6-15) After enlisting, Mr. Glaze attended three months of basic training in San Diego, California. (*Id.* at 15:22-16:6) Following basic training, Mr. Glaze was stationed on the *USS Ranger* in Bremerton, Washington, where he worked as a

---

[2] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

2

fireman apprentice and third-class machinist's mate in the engine room. (*Id.* at 16:7-19; D.I. 111, Ex. A at 92:2-8) Throughout Mr. Glaze's testimony, he indicated that his work in engine and evaporator rooms on the various vessels involved maintaining and operating turbines, generators, valves, pumps, and other equipment, including removing and replacing packing and gaskets during maintenance or overhaul. (D.I. 111, Ex. A at 115:3-7, 116:16-117:18, 122:12-15; D.I. 115, Ex. B at 16:10-18:18, 21:25-22:14) From 1970 to 1973, Mr. Glaze was stationed on the *USS Beatty* in Tampa, Florida, where he worked as a third-class and second-class machinist's mate in the engine room performing the same work as he did on the *USS Ranger*. (D.I. 115, Ex. B at 34:3-20; D.I. 111, Ex. A at 92:12-23) Mr. Glaze then worked for three months in the engine room onboard the *USS Saratoga*. (D.I. 115, Ex. B at 47:11-49:1) In 1973, he was stationed at Corry Field in Pensacola, Florida, a Naval shore training facility, and worked as an auto service manager for approximately two years. (*Id.* at 53:7-25)

From 1975 to 1976, Mr. Glaze worked as a second-class machinist's mate in the engine room onboard the *USS Lexington*. (*Id.* at 59:14-60:6; D.I. 111, Ex. A at 109:13-20) From 1976 to 1978, he worked in the evaporator room of the *USS Sierra*, in which he maintained and operated evaporators and pumps and changed oil, packing, and gaskets. (D.I. 115, Ex. B at 66:9-67:24) Mr. Glaze was then stationed in main control and the engine room onboard the *USS Davis* from 1978 to 1981 and engaged in a more supervisory role as an E-6 first-class. (*Id.* at 69:21-70:13; D.I. 111, Ex. A at 116:10-117:11) In 1981, he was stationed at Charleston, South Carolina Shore Intermediate Maintenance Activity for three years, where he overhauled pumps in the pump shop and became ship superintendent. (D.I. 115, Ex. B at 72:22-73:23; D.I. 111, Ex. A at 57:6-20) Afterwards, Mr. Glaze was again stationed on the *USS Lexington* in Pensacola, Florida, where he worked in the supervisory position of chief machinist's mate in the engine

room. (D.I. 111, Ex. A at 57:25-58:10, 123:5-20) He remained there until he was honorably discharged from the Navy in March or April of 1986. (D.I. 115, Ex. B at 15:9-18) Mr. Glaze then worked as a ship superintendent at the Alabama Dry Dock from 1987 to 1989. (D.I. 1, Ex. 1 at ¶ 24)

Plaintiffs allege in the complaint that Mr. Glaze developed lung cancer as a result of his exposure to asbestos-containing materials, including those provided by each of the moving Defendants, during his service in the United States Navy while working as a machinist mate onboard the *USS Ranger*, *USS Beatty*, *USS Saratoga*, *USS Lexington*, and the *USS Sierra*, as a mechanic at Corry Field Auto Repair, as well as during his occupation as a ship superintendent at the Alabama Dry Dock. (D.I. 1, Ex. 1 at ¶ 24) Plaintiffs assert claims for negligence, willful and wanton conduct, strict liability, concealment, misrepresentation, conspiracy, loss of consortium, mental anguish, and punitive damages. (D.I. 1, Ex. 1)

Mr. Glaze was deposed on January 12, 2021. (D.I. 111, Ex. A-B; D.I. 115, Ex. B-C) Plaintiffs did not produce any other product identification witnesses for deposition.

### III.  LEGAL STANDARD

#### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the nonmoving party to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *See Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Servs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### b. Maritime Law: Substantial Factor Causation

The court granted the parties' stipulation for an order that maritime law shall apply to all issues regarding Naval and sea-based claims and either maritime or Florida law shall apply to friction-based claims.[3] (D.I. 100) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the

---

[3] Plaintiffs claims against the moving Defendants are Naval and sea-based, not friction-based. (D.I. 1, Ex. 1 at ¶ 24; D.I. 106 at 3; D.I. 111 at 7-13; D.I. 113 at 5-6; D.I. 115 at 5; D.I. 117 at 4; D.I. 124 at 8-11) Therefore, maritime law applies to Plaintiffs' claims against the moving Defendants. (D.I. 100)

defendant's product, and (2) the product was a substantial factor[4] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[5] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference

---

[4] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (2nd) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). "The comments to the Restatement indicate[] that the word 'substantial,' in this context, 'denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility.'" *Id.* (quoting Restatement (Second) of Torts § 431 cmt. a (1965)).

[5] However, "substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury." *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

6

that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

## IV. DISCUSSION

### a. Armstrong International, Inc.

The court recommends granting Armstrong's motion for summary judgment because there is no genuine issue of material fact in dispute as to whether an Armstrong product was a substantial factor in causing Mr. Glaze's injuries. Plaintiffs did not identify any asbestos-containing Armstrong products or exposure to any Armstrong products. (*See* D.I. 111, Ex. A-B; *see also* D.I. 115, Ex. B-C) The lack of evidence in the record on product identification and causal nexus supports dismissal of the claims against Armstrong as a matter of law. *See Lindstrom*, 424 F.3d at 492 (noting that a plaintiff must first show that "he was exposed to the defendant's product" to survive summary judgment under maritime law) (citing *Stark*, 21 F. App'x at 376).

### b. Air & Liquid Systems Corporation

The court recommends granting Air & Liquid's motion for summary judgment because there is no genuine issue of material fact in dispute as to whether an Air & Liquid product was a substantial factor in causing Mr. Glaze's injuries. Air & Liquid is the successor by merger to Buffalo Pumps, Inc. (D.I. 1, Ex. 1 at ¶ 3; D.I. 111 at 1) Mr. Glaze testified generally about his work in the engine rooms of several vessels without identifying any work in or around a Buffalo Pump. (D.I. 115, Ex. B at 20:12-23, 36:3-7, 50:15-17, 68:4-14, 71:5-8) The lack of evidence in

7

the record on product identification and causal nexus supports dismissal of the claims against Air & Liquid as a matter of law. *See Lindstrom*, 424 F.3d at 492.

### c. Gardner Denver, Inc.

The court recommends granting Gardner's motion for summary judgment because there is no genuine issue of material fact in dispute as to whether a Gardner product was a substantial factor in causing Mr. Glaze's injuries. Plaintiffs did not identify any asbestos-containing Gardner products or exposure to any Gardner products. (*See* D.I. 111, Ex. A-B; *see also* D.I. 115, Ex. B-C) The lack of evidence in the record on product identification and causal nexus supports dismissal of the claims against Gardner as a matter of law. *See Lindstrom*, 424 F.3d at 492.

### d. FMC Corporation

The court recommends granting FMC's motion for summary judgment because there is no genuine issue of material fact in dispute as to whether an FMC product was a substantial factor in causing Mr. Glaze's injuries. FMC is the successor to Turbo Pump Operation, Chicago Pump Company, and Northern Pump Company.[6] (D.I. 1, Ex. 1 at ¶ 9; D.I. 115 at 1-2) Mr. Glaze testified generally about his work in the engine rooms of several vessels without identifying any work in or around a Turbo, Chicago, or Northern Pump. (D.I. 115, Ex. B at 20:12-23, 36:3-7, 50:15-17, 68:4-14, 71:5-8) The lack of evidence in the record on product identification and causal nexus supports dismissal of the claims against FMC as a matter of law. *See Lindstrom*, 424 F.3d at 492.

---

[6] FMC states in its opening brief that it is improperly sued as "FMC Corporation individually and as successor to Northern Pump Company, Coffin, Chicago Pump Company." (D.I. 115 at 1-2; *see* D.I. 1, Ex. 1 at ¶ 9)

### e. Schneider Electric USA, Inc.

The court recommends granting Schneider's motion for summary judgment because there is no genuine issue of material fact in dispute as to whether a Schneider product was a substantial factor in causing Mr. Glaze's injuries. Schneider is formerly known as Square D Co. ("Square D"). (D.I. 1, Ex. 1 at ¶ 20; D.I. 117 at 1) Plaintiffs did not identify any asbestos-containing Square D products or exposure to any Square D products. (*See* D.I. 111, Ex. A-B; *see also* D.I. 115, Ex. B-C) The lack of evidence in the record on product identification and causal nexus supports dismissal of the claims against Schneider as a matter of law. *See Lindstrom*, 424 F.3d at 492.

### f. Warren Pumps, LLC

The court recommends granting Warren Pumps' motion for summary judgment because there is no genuine issue of material fact in dispute as to whether a Warren Pumps product was a substantial factor in causing Mr. Glaze's injuries. Mr. Glaze testified generally about his work in the engine rooms of several vessels without identifying any work in or around a Warren Pump. (D.I. 115, Ex. B at 20:12-23, 36:3-7, 50:15-17, 68:4-14, 71:5-8) The lack of evidence in the record on product identification and causal nexus supports dismissal of the claims against Warren Pumps as a matter of law. *See Lindstrom*, 424 F.3d at 492.

## V. CONCLUSION

For the foregoing reasons, the court recommends GRANTING Armstrong, Air & Liquid, Gardner, FMC, Schneider, and Warren Pumps' unopposed motions for summary judgment.[7] (D.I. 105; D.I. 110; D.I. 112; D.I. 114; D.I. 116; D.I. 123)

---

[7] The recommendation of the court that summary judgment should be granted due to lack of evidence pertaining to product identification and causation forecloses Plaintiffs' willful and wanton conduct, strict liability, concealment, conspiracy, misrepresentation, loss of consortium, mental anguish, and punitive damages claims.

9

| Defendant | Motion for Summary Judgment |
|---|---|
| Armstrong International, Inc. | GRANT |
| Air & Liquid Systems Corporation | GRANT |
| Gardner Denver, Inc. | GRANT |
| FMC Corporation | GRANT |
| Schneider Electric USA, Inc. | GRANT |
| Warren Pumps, LLC | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve a file specific written objections within fourteen (14) days after being served a copy of this Report and Recommendation. Fed. R. Civ, 72(b)(2). The objections and responses to objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ, P. 72, dated March 7, 2022, a copy of which is available on the court's website http://www.ded.uscourts.gov.

Dated: April 28, 2022

Sherry R. Fallon
United States Magistrate Judge